BENTLEY, (SMEDBERG v.) See Case No. 12,964.

## Case No. 1,333.

In re BENTON et al.

[16 N. B. R. 75; [1] 3 Wkly. Notes, Cas. 547.]

Circuit Court, E. D. Pennsylvania. March 27, 1877.

BANKRUPTCY—JUDGMENT AGAINST BANKRUPT—COLLUSION.

Where one of the members of an insolvent firm, with knowledge of such insolvency, carries a message at the request of a creditor, although unwillingly, to an attorney directing him to enter up judgment upon a judgment note which the firm had previously given, *held*, that he thereby procured the entry of such judgment and the issuing of the execution thereon.

In bankruptcy. Petition of creditors for adjudication of [A. Benton & Bro.] debtors as bankrupts. [Granted.] The testimony disclosed the following facts:—In June, 1876, the firm of A. Benton & Bro., becoming embarrassed, borrowed from certain creditors eleven thousand dollars for business purposes, giving therefor a judgment note, which was duly entered of record. The money was made payable in instalments. On July 15, 1876, a joint judgment note for twenty thousand dollars was executed by the Benton Bros. to Judge Waller and Mrs. Elizabeth J. Benton, the wife of one of the parties, for money alleged to be due to them. This note was left by the firm in the hands of Col. Moyer, their counsel, and he being, at the same time, a friend of Judge Waller, the latter requested him to keep it in his fire-proof safe until wanted. On January 25, 1877, the instalments on the eleven thousand dollar judgment not being paid, the plaintiffs therein called a meeting at the office of their attorney, Mr. Burton. At this meeting the Benton Brothers, Col. Moyer, the eleven thousand dollar judgment creditors, and their counsel were present. The meeting adjourned with the understanding that nothing should be done for forty-eight hours, when a statement of the Benton Brothers' real and personal estate would be furnished. After the meeting, Charles Benton repaired to Mrs. Benton's house and asked her to loan the firm some money. This, as she afterwards testified, alarmed her, and she not only refused the request but directed Charles Benton to go to Col. Moyer and tell him to enter up the judgment and issue execution. Charles Benton remonstrated, saying "it would ruin them." He, however, immediately went to Col. Moyer's office and communicated to him Mrs. Benton's message. Col. Moyer, after endorsing the judgment note for twenty thousand dollars, handed it to another attorney to enter up. Execution was placed in the sheriff's hand at 2.38 P. M. Later, on the same day, Col. Moyer called on Mrs. Benton, explained that as he could not act in the matter he had placed the note in the hands of another attorney, and suggested that Mrs. Benton

[1] [Reprinted from 16 N. B. R. 75, by permission.]

write a letter to the other attorney, authorizing him to enter up the judgment note and issue execution thereon, which Mrs. Benton accordingly did. On the next day, the 26th of January, B. F. Fisher, Esq., received by telegram instructions from Judge Waller to proceed on his behalf on the same judgment note. On January 31, 1877, a number of the unsecured creditors of A. Benton & Bro. filed this petition in bankruptcy.

Frank P. Prichard and G. C. Purves, for petitioning creditors, argued that the facts showed a procurement, by the alleged bankrupts, of the entry of judgment and the execution thereon.

J. M. Moyer, for bankrupts.

There was no intention on the part of the Benton Bros. to give preference. Charles Benton went to Mrs. Benton to get additional money and not to procure execution to be issued. The direction to enter judgment and issue execution came from her without any suggestion from the debtors, and in fact they remonstrated against it. That she was the wife of one of the parties is immaterial. She may be a creditor. The question of procurement is one of intention, and the evidence shows no intention on the part of the Benton Bro. to procure this execution to be issued.

CADWALADER, District Judge. To understand the question in this case, it is necessary to ascertain the relations of Mr. Moyer on the 25th of January, 1877. He was, in a general sense, the professional agent, counsel, or attorney of the alleged bankrupts. His peculiar relation to Judge Waller merely required him to hold the judgment note or bond of 15th July, 1876, until instructions from that gentleman. No instructions by Judge Waller to Mr. Moyer, or to any one else, were given until the next day, the 26th. The execution in question under the judgment upon that note or bond was delivered to the sheriff on the afternoon of the 25th. The question is whether the debtors, or either of them, procured, directly or indirectly, the entry of the judgment and issuing of the execution. The occurrences of the 25th were in three successive stages: first, the meeting at Burton's office; secondly, the communications with Mrs. Benton, and the consequent instructions from her to Mr. Moyer; thirdly, the subsequent acts of the parties. The occurrences at Mr. Burton's ought to have apprised Charles Benton, one of the alleged bankrupts, that their ruin was inevitable, and could not be postponed. With a knowledge, as he states, that trouble was coming, he repaired to Mrs. Benton's and asked her for more money. This naturally alarmed her; and according to the evidence she thereupon sent a message by Charles Benton to Mr. Moyer, in form or substance directing him to proceed immediately to enter the judgment and issue execution. Charles Benton remonstrated earnestly, saying that it would ruin them, etc. Nevertheless he accepted the mission to Mr. Moyer, and communicated to him the lady's direction. Mr. Moyer substituted for himself another attorney for the purpose. By the latter gentleman the judgment was at once entered, and an execution thereon was placed in the sheriff's hands. A written direction to the substituted attorney was obtained from her, and Mr. Moyer explained to her his reasons for advising such a course of procedure. All this occurred in the afternoon of the 25th. The execution is inscribed by the sheriff as received in his office at 2.38 o'clock P. M. Mr. Moyer did not see her until a later hour. On the next day another gentleman of the bar received instructions from Judge Waller authorizing proceedings of a like character on his behalf under the same judgment note, or bond. He was from thenceforth a participant in them. Whether, until then, the sheriff could have levied more than Mrs. Benton's portion of the debt, is a question which it is unnecessary to consider now. The proceedings had been consummated, so far as Mrs. Benton's demand was concerned, on the previous day. I am of opinion that the occurrences of that day involved a procurement, by Charles Benton, of the issuing of the execution. This was the tendency and effect of what he did; and beyond this we are not to inquire as to his intentions. The debtors are adjudged bankrupts.